Robert Louis **STEVENS II and Gabriel T. Stevens, Administrators of the Estate of Robert Louis Stevens, Jr., Plaintiffs,**

v.

**Linda THACKER, Defendant.**

**Civil Action No. 07–10438–NMG.**

United States District Court, D. Massachusetts.

March 18, 2008.

John A. Nealon, Nealon & Nealon Attorneys, Hopkinton, MA, for Plaintiffs.

Juliet A. Davison, Todd & Weld, Boston, MA, for Defendant.

### MEMORANDUM & ORDER

GORTON, District Judge.

Robert Louis Stevens, Jr. ("the decedent") was the plaintiffs' father and the defendant's companion following his divorce from his wife. The decedent's sons Robert Louis Stevens, II and Gabriel Stevens ("the plaintiffs") allege that the decedent transferred certain real property and business assets to the defendant in a manner intended to "preserve his equity" in them but was unable to benefit from that equity due to his untimely death. The plaintiffs allege that the defendant has been unjustly enriched and ask this Court to impose a constructive trust over the subject assets.

### I. *Background*

The decedent died suddenly and unexpectedly on June 23, 2005. He had been divorced from his ex-wife, Adeline Stevens, nine months earlier. The disputed transactions are alleged to have been as follows:

1) The property at 215 Hayden Rowe Street, Hopkinton, Massachusetts had

been the marital home of the decedent and his wife until their separation in 2003. That year it was appraised at $1,500,000. The decedent retained possession of that property pursuant to his divorce and then conveyed it to the defendant for a stated consideration of $1,000,000, of which he received only $750,000.

2) The property at 213 Hayden Rowe Street, Hopkinton, Massachusetts was conveyed to the defendant for a stated consideration of $360,000 but the plaintiffs allege that it was worth approximately $400,000.

3) On April 8, 2002, the decedent used the proceeds of a refinancing of his property at 215 Hayden Rowe Street to purchase a home located at 533 Easton Street, Sarasota, Florida, without the knowledge of his then wife. The decedent transferred that property to the defendant on October 24, 2002, but the Complaint does not state for what consideration.

4) On June 15, 2001, the decedent and the defendant entered into a Land Trust Agreement creating a trust to which each of them was a 50% beneficiary. In the name of the trust they then purchased properties (for unstated considerations) at the following locations:

a) 11 Sunset Drive, # 306, Sarasota, Florida,

b) Lot 14, Block 9, Unit 3, Gulf Gate East, Sarasota, Florida which was later purportedly transferred to the defendant for $10, notwithstanding the trust provisions; and

c) Other, unspecified property in and around Sarasota, Florida, which was allegedly acquired by the defendant and the decedent and concealed from the decedent's then wife.

The decedent and his ex-wife allegedly operated a landscape design and construction business under the name of R.L. Stevens Landscaping Company for more than 20 years. On February 17, 2004, a new Massachusetts corporation was organized under the name of "Landscapes by Robert Louis Stevens, Inc.", of which the defendant was the sole director and officer. The plaintiffs allege that the defendant is also the sole stockholder in the new corporation and that all the assets of R.L. Stevens Landscaping Company were transferred to the new corporation for no consideration.

After describing the several noted transactions, the plaintiffs assert in their Complaint that the defendant has been unjustly enriched and that they are therefore entitled to have a constructive trust imposed with respect to all of the disputed property. Before the Court are the defendant's motion to dismiss and the plaintiffs' motion to amend the complaint.

## II. *Analysis*

### A. Motion to Dismiss Complaint

#### 1. Standard of Review

A court may not dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell,* 160 F.3d 67, 72 (1st Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.,* 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248 F.3d 1127 (1st Cir.2000). Furthermore, the court

must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet*, 83 F.Supp.2d at 208.

### 2. Forum Non Conveniens and Transfer

The defendant's motion to dismiss focuses primarily on the inconvenience of litigating in Massachusetts. Her first basis for dismissal is *forum non conveniens* but, in the alternative, she requests a transfer of the case to the Middle District of Florida where she resides. Only after pressing her claims of inconvenience does she assert that the plaintiffs have failed to state a claim upon which relief can be granted. In that regard, she argues, that the plaintiffs lack standing to sue because the decedent transferred the subject property to her willingly and for his own benefit. The defendant also contends that the plaintiffs' equitable claims fail for the same reason.

■ As this Court indicated to the parties at the hearing on June 14, 2007, the arguments for dismissal pursuant to *forum non conveniens* and for transfer to the Middle District of Florida are unpersuasive. Where venue is proper in multiple districts the plaintiff's choice of forum is ordinarily given preference. *E.g. Auto Europe, LLC v. Conn. Indem. Co.*, 321 F.3d 60, 64 (1st Cir.2003). There is no reason to deviate from the accepted practice in this case.

### 3. Legal Claims

Although the Complaint asserts no legal claims, it is instructive to survey the facts

alleged through the more familiar (and sharply-focused) lens of the laws of contract and property. Understanding the interactions among the decedent, the defendant and the plaintiffs in those terms provides essential background against which to apply the equitable doctrines relied upon in the Complaint.

■ The plaintiffs' reference to "preservation of equity" in the decedent is vague but is apparently intended to describe an agreement, albeit unwritten, between the decedent and the defendant under which some interest in the several properties was to be retained by the decedent. Such an agreement would, of course, be barred by the Statute of Frauds with respect to all of the real property transactions described in the "Background" section above. M.G.L. c. 259 § 1. An oral agreement concerning the future transfer of assets of the business would run afoul of the Statute of Frauds as well, provided they involve goods with an aggregate value above $500. M.G.L. c. 106 § 2–201.

■ The Complaint also refers to several instances in which the consideration given for a certain parcel of real estate was allegedly inadequate. However,

> It is an elementary and oft-quoted principle that the law will not inquire into the adequacy of consideration so long as the consideration is otherwise valid to support a promise.

*See* 7 WILLISTON ON CONTRACTS § 21. The plaintiffs' repeated assertions that the subject transactions "were not intended to be arms length transactions" are of no legal import whatsoever. A contract need not be "arms length" to be valid.[1]

---

1. Although a contract may be voided if it is unconscionable to the Court, *see, e.g., Miller v. Cotter*, 448 Mass. 671, 863 N.E.2d 537 (2007), parties with shared interests and experiences

may agree to terms that unacquainted parties would not reach. Such agreements are not, *a fortiori*, unconscionable. The common law is

The plaintiffs are apparently aware of the obvious barriers to their recovery and, to their credit, do not challenge them directly. Knowing that they are without legal recourse, they have, instead, pursued only the equitable claims of unjust enrichment and the establishment of a constructive trust.

### 4. Unjust Enrichment

The absence of legal claims and the amorphous nature of the equitable doctrines at issue render the Complaint somewhat obscure. In its effort to construe it fairly, this Court will accept the truth of all facts alleged in the Complaint and draw all reasonable inferences in the plaintiffs' favor.

With respect to each of the transactions described in the Background section above, the plaintiffs assert that the decedent's intention was to "preserve his equity" in the property transferred to the defendant. Because the result of those transactions was, however, the unconditional transfer of all right, title and interest to the defendant, those intentions were frustrated.

The Complaint pleads two counts of "constructive trust/ unjust enrichment" and one count of simple unjust enrichment. A constructive trust is, of course, a remedy rather than a cause of action so the nature of the first two counts is blurred. Just why the plaintiffs are entitled to a constructive trust is not explained, other than for the argument that they "have been deprived of their rights" in the property. Those "rights" are not defined.

██ In order to state a claim for unjust enrichment a plaintiff must prove

(1) a benefit conferred upon the defendant by the plaintiff;

(2) an appreciation or knowledge of the benefit by the defendant; and

(3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable.

*See* 12 WILLISTON ON CONTRACTS § 1479. Assuming, *arguendo*, that the plaintiffs have standing to sue on behalf of the decedent (which is discussed below), the first two elements of this equitable cause of action are met. The defendant allegedly received the property in question for below-market consideration and she was allegedly aware of the benefits. The third element, however, requires proof of some injustice in her acceptance or retention of those benefits. Such injustice is neither pled nor readily apparent.

██ Furthermore, a constructive trust should be imposed only when the defendant obtained title to the property

by fraud or in violation of a fiduciary relationship or where information confidentially given or acquired was used to the advantage of the recipient at the expense of one who disclosed the information.

*Barry v. Covich*, 332 Mass. 338, 342–43, 124 N.E.2d 921 (1955). No such fraud or misuse of confidential information is alleged here and there was no fiduciary relationship between the decedent and the defendant. Therefore, the elements of a constructive trust are not met.

██ It is a well-known maxim that "equity follows the law", *i.e.*, equitable remedies exist to supplement those available at

replete with cases evaluating contracts among family members, for example, and the fact that they were not made at arms' length does not determine their outcomes. *E.g. Hamer v. Sidway*, 124 N.Y. 538, 27 N.E. 256 (1891)

(enforcing a contract whereby an uncle promised to pay his nephew $5,000 if the nephew refrained from certain behaviors until his 21st birthday).

law and not to contradict the judgments embodied in the statutes and the common law. The common law governing cases such as this is, as discussed above, abundantly clear. Although it is true that equitable remedies are in some circumstances available to plaintiffs whose actions are barred by the Statute of Frauds, *e.g. Heil v. McCann,* 360 Mass. 507, 511, 275 N.E.2d 889 (1971), no such relief is available here. The reasoning in *Heil* was that the Statute of Frauds should not be "employed as an instrument of fraud", *id.,* by barring enforcement of an admitted oral contract. There is no allegation of fraud here. The Complaint alleges "agreements between the deceased and the defendant which benefited both of them and preserved equity for both of them", *i.e.,* agreements that were beneficial to both contracting parties.

The plaintiffs do not seek full rescission of the contracts. Instead they imply that there may have been unspoken obligations of the defendant to reserve future benefits for the decedent which he was unable to enjoy because of his premature death. The Complaint does not specify what those obligations or benefits were but expresses a hope that discovery might reveal them.

The Complaint describes a series of transactions between the decedent and the defendant which were entered into with the full knowledge of both parties and for their mutual benefit. No inference about what the parties to the contracts might have intended or expected for the future can change that fact. Because equity will not act to rescind, even in part, such agreements absent evidence (much less allegations) of wrongdoing on either side, the plaintiffs have failed to state a claim upon which relief can be granted. The motion to dismiss will, therefore, be allowed.

## B. Motion to Amend Complaint

The parties appeared at a hearing in this Court on June 14, 2007, at which time the Court expressed doubt about whether the plaintiffs had standing to sue as executors of the estate rather than as heirs of the decedent. After that hearing the plaintiffs filed a motion to amend their complaint but did not attach a proposed amended complaint to their motion. It is presumed that the only amendment they seek to make is to change the capacity in which they sue. Such an amendment is readily allowable but is, alas, to no avail. This Court appreciates the plaintiffs' familial disappointment with their father's conduct in his latter years but such injuries as they may have suffered are not legally attributable to the defendant and cannot be remedied in this forum.

Whether the plaintiffs sue as heirs or administrators is immaterial for the reasons stated above. As the Court observed at the hearing on June 14, 2007, the disposition of the decedent's estate is a matter of probate law and must be pursued in the Massachusetts Probate Court. The equitable remedies sought here would be unavailable even to the decedent himself, were he able to pursue them. Therefore, the motion to amend complaint will be denied as moot.

## ORDER

In accordance with the foregoing, the defendant's motion to dismiss (Docket No. 2) is **ALLOWED** and the plaintiffs' motion to amend complaint (Docket No. 9) is **DENIED** as moot.

**So ordered.**